ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Apelado<br><br>V.<br><br>YESEF YAIR CORDERO LEBRÓN, LILLIAM TORRES MARÍN Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Apelantes | TA2026AP00313 | Apelación procedente del Tribunal de Primera Instancia Sala Superior de Caguas<br><br>Civil Núm. GR2024CV00010<br><br>Sobre:<br>Cobro de dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 18 de mayo de 2026.

Comparecen el Sr. Yesef Yair Cordero Lebrón, la Sra. Liliam Torres Marín y la Sociedad Legal de Gananciales compuesta por ambos (matrimonio Cordero-Torres o parte apelante) en solicitud de que revisemos la *Sentencia* emitida el 23 de febrero de 2026 y notificada al día siguiente por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI).[1]

Mediante el referido dictamen, el foro primario acogió una solicitud de sentencia sumaria presentada por el Banco Popular de Puerto Rico (BPPR o apelado) declarando Con Lugar la *Demanda* de epígrafe. En consecuencia, condenó a la parte apelante a pagarle al BPPR la suma de $49,758.40 por concepto de principal, más la suma de $42,167.70 por concepto de intereses acumulados, los cuales continuaban acumulándose, y una partida de $5,000.00 por concepto de honorarios de abogado.

---

[1] Entrada Núm. 19 del caso GR2024CV00010 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

Este caso tuvo su génesis el 18 de enero de 2024, cuando el BPPR presentó una *Demanda* sobre cobro de dinero en contra del matrimonio Cordero-Torres.[2] Allí, alegó que, el 16 de octubre de 2003, le concedió a la extinta corporación Cordero & Torres Marín LLC t/c/c Cordero & Associates Law Firm, LLC (Cordero & Associates), una reserva para la cuenta #306015059, identificada como el préstamo #101-2324741-8801, por la suma de $50,000.00 con intereses fluctuantes sobre el balance del principal debido a razón de 2% sobre el "Prime Rate". Sostuvo que, para garantizar solidariamente las obligaciones contractuales de dicha corporación, la parte apelante suscribió documentos de *Garantía Ilimitada y Continua* el 15 de octubre de 2003 y el 13 de mayo de 2010, respectivamente.

Posteriormente, manifestó que, el 20 de septiembre de 2012, el apelado le concedió a Cordero & Associates un plan de pago para la reserva de la cuenta #306015059, el cual devengaría intereses a razón de 5.25% sobre el "Prime Rate", sujeto a los mismos términos y condiciones antes negociados, incluyendo la garantía solidaria del matrimonio Cordero-Torres. No obstante, esbozó que la parte apelante dejó de pagar la reserva según pactado, en incumplimiento con sus obligaciones contractuales. Por lo cual, solicitó que se ordenara al matrimonio Cordero-Torres pagar la suma principal de $49,758.40, más la cantidad de $42,167.70 por concepto de intereses acumulados a dicha fecha, los cuales continúan acumulándose diariamente, más costas, gastos y honorarios de abogado.

---

[2] *Íd.*, Entrada Núm. 1 en SUMAC.

Tras varios incidentes procesales, el 17 de junio de 2024, el matrimonio Cordero-Torres presentó una *Moción de Sentencia Sumaria*.[3] En esencia, alegó que la reclamación del BPPR se encontraba prescrita. Señaló que, conforme a la Ley Núm. 208-1995, *infra*, el apelado tenía un término de tres (3) años para presentar la acción de cobro desde el vencimiento acelerado de la deuda que fue el 1 de julio de 2015, entiéndase hasta el 30 de julio de 2018. A pesar de ello, indicó que la única gestión extrajudicial llevada a cabo con posterioridad a esa fecha por el BPPR fue el 28 de septiembre de 2023 y que no fue hasta el 18 de enero de 2024 que presentó su reclamación.

De igual forma, adujo que por tratarse de una línea de crédito comercial le eran aplicables las disposiciones del Código de Comercio, *infra*. En específico, puntualizó que el Artículo 940 de dicho código disponía un término prescriptivo de cinco (5) años, que solo se podía interrumpir mediante vía judicial y no extrajudicial. Por lo que, solicitó que se desestimara la causa de acción por prescripción.

Por su parte, el 19 de julio de 2024, el BPPR presentó su *Oposición a "Moción de Sentencia Sumaria" - Parte Demandada* y, a su vez, una *Solicitud de Sentencia Sumaria – Parte Demandante*.[4] En esencia, alegó que procedía dictar sentencia sumaria, pero en contra de la parte apelante. Manifestó que no había controversia de que el apelado le extendió una línea de crédito a la extinta corporación, Cordero & Associates, y que esta fue garantizada solidariamente por el matrimonio Cordero-Torres. A su vez, esbozó que era incuestionable que la parte apelante dejó de pagar la línea de crédito en incumplimiento con sus obligaciones contractuales.

---

[3] *Íd.*, Entrada Núm. 13 en SUMAC.
[4] *Íd.*, Entrada Núm. 15 en SUMAC.

Por otra parte, arguyó que la línea de crédito no satisfacía los requisitos estatutarios de un instrumento negociable al especificar otros compromisos adicionales al pago de dinero. En específico, señaló que dicho pagaré expresamente consignaba que estaba sujeto a los términos y las condiciones del Contrato de Cuentas de Depósito, los cuales se incorporaban por referencia.

De igual forma, sostuvo que el negocio jurídico tampoco era un "acto de comercio", sujeto a las disposiciones del Código de Comercio, *infra*. Particularmente, indicó que el matrimonio Cordero-Torres no presentó evidencia alguna sobre el propósito dual requerido por nuestro ordenamiento jurídico, por lo que era un "acto civil" sujeto a las normas generales de derecho. A su vez, adujo que la deuda monetaria reclamada era líquida, vencida y exigible, por ende, procedía disponer sumariamente del caso.

En respuesta, el 29 de agosto de 2025, el matrimonio Cordero-Torres presentó una *Réplica a Moción en Oposición a Sentencia Sumaria*.[5] Allí, reiteró que estaban ante un acto de comercio donde el BPPR concedió el préstamo aplicando todos los criterios de los préstamos comerciales, los cuales eran totalmente distintos e inaplicables para la concesión de préstamos personales.

De igual forma, señaló que los criterios para abrir cuentas corrientes comerciales eran distintos a los de cuentas corrientes personales y que el apelado estaba impedido de beneficiarse de las condiciones e intereses de un préstamo comercial y luego pretender negarle a la parte apelante la aplicación de las protecciones del Código de Comercio. A tales efectos, esbozó que el BPPR estaba obrando contra sus propios actos.

Por otra parte, manifestó que el pagaré cumplía con las disposiciones de la Ley Núm. 208-1995, *infra*. Así, indicó que, de una simple lectura de la enmienda al pagaré, no surgía que el

---

[5] *Íd.*, Entrada Núm. 16 en SUMAC.

mismo especificara otro compromiso o instrucción por parte de la persona que promete u ordena que no sea el pago del dinero. A su vez, esgrimió que, aunque el pagaré contenía una referencia al Contrato de Préstamo, la mera alusión a ese documento no convertía la promesa u orden en una condicional.

Examinados los escritos, el 23 de febrero de 2026, el TPI emitió una *Sentencia* que notificó al día siguiente.[6] En esta, formuló las siguientes determinaciones de hechos:

1. El 16 de octubre de 2003, según documento de Anejo al Contrato – FlexiCuenta de Negocios, Popular le aprobó a Cordero & Torres Marín LLC, luego Cordero & Associates Law Firm, LLC ("Cordero & Associates"), una línea de crédito llamada FlexiLínea.

2. La FlexiLínea consistía en una reserva para la cuenta #306-01505-9 de Cordero & Associates, hasta un máximo de $50,000.00, cuyas cuantías desembolsadas devengarían intereses fluctuantes a razón de 2% sobre la Tasa de Interés Primario ("Prime Rate"), entre otros [...] términos [y] condiciones negociados.

3. El 16 de octubre de 2003, el Matrimonio Cordero-Torres suscribió una Garantía Ilimitada y Continua mediante la cual garantizó solidariamente todas las obligaciones de Cordero & Associates con Popular.

4. La FlexiLínea se renovó en los años siguientes por Popular y Cordero & Associates.

5. El 13 de mayo de 2010, el Matrimonio Cordero-Torres renovó su garantía solidaria para con Popular con respecto a las obligaciones de Cordero & Associates.

6. El 20 de septiembre de 2012, la FlexiLínea se reestructuró para modificar varios términos y condiciones del repago, incluyendo la tasa de interés aplicable, que se incrementó a 5.5% sobre la Tasa de Interés Primario ("Prime Rate").

7. En junio de 2015, se efectuó el último pago para la FlexiLínea.

8. El 1 de julio de 2015, Popular notificó que cancelaría la FlexiLínea por falta de documentación, de no recibirse esta en diez (10) días laborables.

9. El 29 de septiembre de 2015, Popular reclamó las mensualidades entonces adeudadas por razón de la FlexiLínea, correspondiente a los meses de julio, agosto y septiembre de 2015, advirtiendo que se cancelaría de no recibirse el pago en diez (10) días laborables, quedando entonces el balance total vencido y debido.

10. El 31 de diciembre de 2019, se canceló en el Departamento de Estado el certificado de incorporación de Cordero & Associates.

---

[6] Ver nota al calce Núm. 1.

11. El 27 de septiembre de 2023, Popular reclamó el pago de las cuantías entonces adeudadas por razón de la FlexiLínea, ahora Préstamo #101-2324741 8801.

12. Al 18 de enero de 2024, el Matrimonio Cordero-Torres adeudaba a Popular por razón del Préstamo #101-2324741-8801 (antes la FlexiLínea) la suma de $49,758.40 por concepto de principal, más la suma de $42,167.70 por concepto de intereses acumulados hasta esa fecha y los cuales continúan acumulándose diariamente hasta la fecha de su total y completo pago.

13. El Matrimonio Cordero-Torres no presentó prueba específica del uso dado a los fondos utilizados por Cordero & Associates bajo la FlexiLínea.

14. Las sumas reclamadas por Popular al Matrimonio Cordero-Torres están vencidas, son líquidas y exigibles.

15. Popular ha realizado gestiones de cobro al Matrimonio Cordero-Torres, resultando estas infructuosas.

En virtud de estas determinaciones de hechos formuladas, así como el derecho aplicable, juzgó que procedía resolver el pleito sumariamente. Primeramente, descartó los planteamientos de la parte apelante de que eran aplicables los términos prescriptivos bajo legislaciones especiales, a saber, el Código de Comercio, *infra*, y la Ley Núm. 208-1995, *infra*. Explicó que el Código de Comercio, *infra*, le aplicaba a los "actos de comercio" y quien lo invocaba le recaía el peso de la prueba. No obstante, expresó que el matrimonio Cordero-Torres no desfiló prueba alguna del uso dado a los fondos de la línea de crédito. Por lo cual, determinó que estaba impedido de examinar si el negocio jurídico constituía un acto de comercio o no.

De otra parte, en cuanto a la Ley Núm. 208-1995, *infra*, expuso que la misma solo era aplicable a los "instrumentos negociables". Sin embargo, señaló que el *Anejo al Contrato – FlexiCuenta de Negocios* expresamente hacía referencia a términos y condiciones de otro contrato que incorporaba por referencia, lo que negaba que fuera un instrumento negociable. A tales efectos, resolvió que el negocio jurídico en controversia era un instrumento no negociable, sujeto a las normas generales de prescripción, es decir, quince (15) años.

Así pues, concluyó que el matrimonio Cordero-Torres se obligó solidariamente al fiel cumplimiento de las obligaciones contraídas de la extinta corporación y que la deuda reclamada estaba vencida, era exigible y líquida. Por tal razón, juzgó que, no habiendo hecho material en controversia, procedía dictar sentencia sumaria y declaró Con Lugar la *Demanda*. En consecuencia, condenó a la parte apelante:

> [A] pagarle a Popular la suma de $49,758.40 por concepto de principal, más la suma de $42,167.70 por concepto de intereses acumulados al 18 de enero de 2024 y los cuales continúan acumulándose diariamente hasta la fecha del total y completo pago del Préstamo #101-2324741-8801, más la suma de $5,000.00 por concepto [de] honorarios de abogado.

Inconforme, el 26 de marzo de 2026, el matrimonio Cordero-Torres acudió ante nos mediante el presente recurso de *Apelación*, en el que le atribuyó al TPI la comisión de los siguientes errores:

> **PRIMER ERROR: [ERRÓ] EL TPI AL DETERMINAR QUE LA CAUSA DE ACCIÓN NO ESTABA PRESCRITA CONFORME A LAS DISPOSICIONES DE LA LEY DE TRANSACCIONES COMERCIALES.**
>
> **SEGUNDO ERROR: [ERRÓ] EL TPI AL DETERMINAR, EN LA ALTERNATIVA, QUE LA CAUSA DE ACCIÓN NO ESTABA PRESCRITA CONFORME AL [CÓDIGO] DE COMERCIO DE PUERTO RICO.**
>
> **TERCER ERROR: [ERRÓ] EL TPI AL NO CONSIDERAR QUE A LA PARTE APELANTE LE ASISTÍAN LAS MISMAS DEFENSAS QUE AL DEUDOR PRINCIPAL POR SER ESTA DEUDORA SOLIDARIA Y NO DEUDORA PRINCIPAL.**
>
> **CUARTO ERROR: [ERRÓ] EL TPI AL NO DETERMINAR QUE EL BANCO ACTUÓ CON MANOS LIMPIAS EN LA TRANSACCIÓN Y POR ENDE ESTABA IMPEDIDO DE GESTIONAR EL COBRO NEGANDO LA APLICABILIDAD DE LA LEGISLACIÓN EN QUE SE BASÓ PARA CONCEDER EL PRÉSTAMO.**

Mediante su primer señalamiento de error, argumentó que el pagaré era un instrumento negociable y el hecho de que haga referencia al Contrato de Préstamo no condicionaba automáticamente la promesa u orden. De igual forma, señaló que de la enmienda al pagaré de interés no surgía otro compromiso o instrucción que no sea el pago del dinero. Por tal motivo, razonó que era aplicable el término prescriptivo de tres (3) años dispuesto en la

Ley Núm. 208-1995 y, en consecuencia, la causa de acción se encontraba prescrita.

En cuanto al segundo señalamiento de error, señaló que, asumiendo que no eran aplicables las disposiciones de la Ley Núm. 208-1995, el Código de Comercio, *infra*, establecía que los actos de comercio se regirían por las normas contenidas en él. A tales efectos, sostuvo que por tratarse de una línea de crédito comercial le era aplicable el término de cinco (5) años que disponía el Artículo 940 de dicho código, que solamente se podía interrumpir mediante la vía judicial y no extrajudicial.

A su vez, añadió que el BPPR concedió el préstamo aplicando todos los criterios, requisitos y parámetros de los préstamos comerciales, los cuales son distintos a los personales. Por lo cual, arguyó que la reclamación de epígrafe por esta vertiente también se encontraba prescrita.

Sobre el tercer señalamiento de error, manifestó que el TPI erró al no considerar que a la parte apelante le asistían las mismas defensas que al deudor principal. En particular, señaló que, para el 30 de junio de 2018, fecha en la que el apelado tenía para presentar su *Demanda*, aún Cordero & Associates tenía existencia legal. Por lo que, esgrimió que, no habiéndose hecho la reclamación al acreedor principal dentro del término dispuesto por ley, la misma quedó igualmente prescrita en cuanto al deudor solidario.

Finalmente, en el cuarto señalamiento de error, planteó que el BPPR no podía beneficiarse de las condiciones e intereses de un préstamo comercial y luego privarle a la parte apelante la protección que les brindaban las disposiciones del Código de Comercio, *infra*. Así pues, puntualizó que el apelado ha actuado en contra de sus propios actos, lo cual era prohibido por la doctrina de actos propios.

Por su parte, el 27 de abril de 2026, el BPPR presentó su alegato en oposición, en el que solicitó confirmar la *Sentencia*

apelada toda vez que la parte apelante no logró controvertir las determinaciones de hechos consignadas ni demostró que el TPI haya incurrido en pasión, prejuicio o error manifiesto.

En esencia, sostuvo que el matrimonio Cordero-Torres falló en presentar prueba alguna del uso dado por Cordero & Associates a los fondos obtenidos de la línea de crédito. Por lo cual, arguyó que el TPI se encontraba impedido de examinar si el negocio jurídico constituyó un acto de comercio o no. Igualmente, rechazó que al negocio jurídico le fueran aplicables las disposiciones de la Ley Núm. 208-1995, *infra*. Señaló que dicho negocio hacía alusión a los términos y condiciones de otro contrato que incorporaba por referencia, lo cual negaba que fuera un instrumento negociable.

Por ello, esbozó que a la presente causa de acción le era aplicable el término prescriptivo de quince años del Código Civil, *infra*. A tales efectos, esgrimió que, ante el incumplimiento de la parte apelante con sus obligaciones contractuales con el BPPR, la deuda se declaró vencida, líquida y exigible, por lo que procedía que la sentencia emitida por el TPI sea confirmada.

## II.

### A. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal que permite disponer de un caso ágilmente, sin la celebración de un juicio, siempre que no existan controversias genuinas de hechos materiales que requieran ser dilucidadas en un juicio plenario. *Coop. Seguros Múltiples de PR v. ELA*, 2025 TSPR 78, 216 DPR ___ (2025); *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021). Un hecho material es aquel esencial y pertinente que puede afectar el resultado de la reclamación conforme al derecho sustantivo. Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1; *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Así, procede dictar sentencia

sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas, junto con cualquier otra evidencia, demuestran que no existe controversia real y sustancial sobre los hechos esenciales. Regla 36.3(e) de Procedimiento Civil, *supra,* R. 36.3 (e); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013).

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales que entienda que están en disputa mediante evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra,* págs. 336-337. Cuando la petición de sentencia sumaria está respaldada con declaraciones juradas u otra prueba, el oponente no puede descansar en meras alegaciones, sino que debe responder con igual grado de especificidad y detalle. Regla 36.3 (c) de Procedimiento Civil, *supra,* R. 36.3 (c); *Birriel Colón v. Econo y otro, supra; Ramos Pérez v. Univisión, supra,* pág. 215. Empero, la falta de prueba para refutar la evidencia del promovente no implica la concesión automática de la sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN* et al., *supra,* pág. 337.

Cuando el tribunal de instancia no dicta sentencia sumaria sobre la totalidad del pleito o la deniega, la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4, le impone la siguiente obligación:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en

controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. [...]

Por otro lado, en la revisión de una sentencia sumaria, este Tribunal de Apelaciones se encuentra en la misma posición que el foro primario para examinar *de novo* la solicitud de sentencia sumaria, conforme con la Regla 36 de Procedimiento Civil, *supra*, R. 36. *Meléndez González et al. v. M. Cuebas, supra*. En tal ejercicio, solamente se puede considerar la evidencia que se presentó ante el foro *a quo*, y se debe examinar el expediente de la forma más favorable a la parte opositora. *Íd.*

Asimismo, corresponde verificar que tanto la solicitud de sentencia sumaria como su oposición cumplan con los requisitos procesales de la Regla 36 de Procedimiento Civil, *supra*, R. 36, discutidos en el caso *SLG Zapata-Rivera v. J.F. Montalvo, supra. Íd.* Posteriormente, debe determinarse si existen hechos materiales en controversia. De ser así, este Tribunal debe distinguir entre los hechos controvertidos e incontrovertidos, según la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Íd.* De no existir hechos materiales en controversia, procede evaluar si el foro primario aplicó correctamente el derecho. *Íd.*

### B. Contratos

El Artículo 1044 del Código Civil de 1930 (Código Civil), 31 LPRA sec. 2994,[7] dispone que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y estas deben cumplirse al tenor de estos. Se entiende que un contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Art. 1206 del Código Civil, *supra*, sec. 3371. En los mismos, los contratantes pueden establecer los pactos, las cláusulas y las

---

[7] Se hace referencia al derogado Código Civil, dado que sus disposiciones se encontraban vigentes al momento de la contratación y la ocurrencia de los hechos que originan la controversia que nos ocupa.

condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral ni al orden público. Art. 1207 del Código Civil, *supra*, sec. 3372. De otra parte, la validez ni el cumplimiento de la obligación contractual pueden dejarse al arbitrio de uno de los contratantes. Art. 1208 del Código Civil, *supra*, sec. 3373.

No existe contrato hasta tanto concurra el consentimiento de los contratantes, objeto cierto que sea materia del contrato y una causa de la obligación que se establezca. Art. 1213 del Código Civil, *supra*, sec. 3391. Ante esto, los contratos van a verse perfeccionados y a obligar por el mero consentimiento de las partes. No solo obligarán al cumplimiento específico de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, *supra*, sec. 3375. Adicionalmente, si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieran contrarias a la intención evidente de los contratantes, prevalecerán estas sobre aquellas. Art. 1233 del Código Civil, *supra*, sec. 3471.

Debe destacarse que cuando los tribunales evaluamos la intención de los contratantes, debemos no solamente considerar los actos anteriores, coetáneos y posteriores al contrato, sino también las circunstancias indicativas de la voluntad de las partes. *Merle v. West Bend Co.*, 97 DPR 403 (1969); *Blas v. Hosp. Guadalupe*, 167 DPR 439 (2006), *citando el* Art. 1234 del Código Civil, *supra*, sec. 3472.

### C. Prescripción extintiva

La prescripción extintiva es una figura del derecho sustantivo que extingue el derecho a ejercer cierta causa de acción por la inacción de una parte durante un tiempo determinado. *Nevárez*

*Agosto v. United Surety et al.*, 209 DPR 346 (2022); *Cacho González et al. v. Santarrosa et al.*, 203 DPR 215, 228 (2019); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 372-373 (2012). El propósito de este precepto jurídico es castigar la inercia y estimular el rápido ejercicio de las acciones. *Íd.* Así pues, en nuestro ordenamiento jurídico, se parte de la idea de que las reclamaciones válidas se ejercen oportunamente, por lo que una persona no debe estar sujeta a la incertidumbre de una posible reclamación de forma indefinida y en estado de indefensión como consecuencia del paso del tiempo y la pérdida de la prueba. *Maldonado Rivera v. Suárez y otros*, 195 DPR 182, 192-193 (2016). De esta forma, se atiende la necesidad de que exista estabilidad y seguridad tanto en las relaciones jurídicas como en el tráfico jurídico. *Íd.*, pág. 192; *Cacho González et al. v. Santarrosa et al., supra*, pág. 228.

El Artículo 1830 del Código Civil, *supra*, sec. 5241, establece que los derechos y las acciones se extinguen por medio de la prescripción. *Santos de García v. Banco Popular*, 172 DPR 759, 766 (2007). A esos efectos, el Artículo 1861 del Código Civil, *supra*, sec. 5291, dispone que "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley". De manera que, "en ausencia de un acto interruptor, el titular de una causa de acción pierde su derecho a instarla si no la ejerce en el plazo que la ley establece." *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1067 (2020).

Los términos prescriptivos varían según el tipo de derecho o acción. En lo pertinente al presente caso ante nos, el Código Civil establece un término prescriptivo de quince (15) años para las acciones personales que no tienen señalados términos especiales de prescripción. Art. 1864 del Código Civil, *supra*, sec. 5294; *Xerox Corp. v. Gómez Rodríguez y otros*, 201 DPR 945, 952 (2019).

### D. Instrumento Negociable

La Ley Núm. 208-1995, según enmendada, conocida como la *Ley de Transacciones Comerciales*, 19 LPRA sec. 401 *et seq.*, es una legislación especial destinada a regular los instrumentos negociables, así como su negociabilidad, cesión y exigibilidad. Esta ley define el término instrumento negociable como "una promesa o una orden incondicional de pago de una cantidad específica de dinero, [...], si el mismo:

> (1) es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
> (2) es pagadero a la presentación o en una fecha específica; y
> (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener (i) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (ii) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (iii) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor. *Íd.*, Sec. 2-104 de la Ley Núm. 208-1995, *supra*, sec. 504.

Ahora bien, la Sección 2-118 de la Ley Núm. 208-1995, *supra*, sec. 518(a) atiende el término prescriptivo de los instrumentos negociables y, en lo pertinente, dispone que:

> [U]na acción para exigir el cumplimiento de la obligación contraída por una parte de pagar un pagaré que es pagadero en una fecha específica deberá comenzarse dentro de los tres (3) años siguientes a la fecha o fechas de vencimiento estipuladas en el pagaré o, si la fecha de pago se acelera, dentro de los tres (3) años siguientes a la fecha de vencimiento acelerado.

Finalmente, salvo que disposiciones particulares de la Ley Núm. 208-1995, *supra*, dispongan lo contrario, los principios generales de derecho de nuestra jurisdicción se aplicarán de modo supletorio. *Íd.*, Sec. 1-103 de la Ley Núm. 208-1995, *supra*, sec. 402; *DLJ Mortgage v. SLG Santiago-Ortiz,* 202 DPR 950, 967 (2019). Por ello, nuestro Máximo Foro ha expresado en reiteradas ocasiones que, aun cuando las disposiciones del Código Civil, *supra*, pudieran aplicar a una controversia que también esté regulada por la Ley Núm. 208-1995, *supra*, este sólo aplicará de manera supletoria. *Íd.*

**E. Código de Comercio**

El Artículo 2 del Código de Comercio de Puerto Rico de 1932, 10 LPRA sec. 1002 (Código de Comercio), establece que los actos de comercio, estén o no especificados en dicho cuerpo de normas:

> [S]e regirán por las disposiciones contenidas en él; y en su defecto, por los usos del comercio observados generalmente en cada plaza, y a falta de ambas reglas, por las del derecho común. Serán reputados actos de comercio los comprendidos en este Código, y cualesquiera otros de naturaleza análoga.

A pesar de ello, no existe en nuestro ordenamiento un concepto unitario del acto de comercio, por lo que cada situación se debe examinar por separado. *Pescadería Rosas, Inc. v. Lozada*, 116 DPR 474, 479 (1985). No obstante, existen elementos comunes entre diversos actos mercantiles, como "su finalidad, su conexión con el tráfico mercantil, su habitualidad [y] su atención al valor permutable de las cosas". *Reece Corp. v. Ariela, Inc.*, 122 DPR 270, 279-280 (1988). Ahora bien, quien invoque el Código de Comercio le recae el peso de la prueba respecto a su aplicabilidad. *Soc. de Gananciales v. Paniagua Diez*, 142 DPR 98, 106 (1996). Así, las acciones en virtud del aludido código que no tengan un plazo determinado prescribirán a los cinco (5) años. Art. 940 del Código de Comercio, *supra*, sec. 1902.

**III.**

En el presente caso, la parte apelante nos plantea que el TPI falló en determinar mediante sentencia sumaria que al préstamo comercial concedido por el BPPR no le eran aplicables las disposiciones de la Ley Núm. 208-1995, *supra*, ni las del Código de Comercio, *supra*, sino que se regía por el cuerpo de normas del Código Civil. De igual forma, arguyó que el foro *a quo* incidió al no tomar en consideración que al matrimonio Cordero-Torres le cobijaban todas las defensas que tenía el principal deudor, Cordero

& Associates, así como que tampoco consideró que el apelado obró en contra de sus propios actos.

De entrada, destacamos que, a tenor con nuestro mandato reglamentario y jurisprudencial, nos corresponde efectuar una revisión de *novo* de la sentencia sumaria, conforme a los requisitos establecidos en la Regla 36 de Procedimiento Civil, *supra*, R. 36. Tras una revisión sosegada de los petitorios sumarios, así como sus respectivas oposiciones, colegimos que las partes cumplieron cabalmente con los requisitos enunciados y que no existía controversia sobre hechos materiales que impidiera la adjudicación sumaria del pleito. Por lo que, resta evaluar la corrección de la aplicación del derecho.

De la documentación que obra en el expediente se demostró que el 16 de octubre de 2003, el BPPR y Cordero & Associates llevaron a cabo un negocio jurídico donde esta última recibió una línea de crédito por $50,000.00 bajo los términos y condiciones esbozados en dicho instrumento. Las obligaciones del mencionado acuerdo fueron garantizadas solidariamente por el matrimonio Cordero-Torres el 15 de octubre de 2003 y renovadas el 13 de mayo de 2010. Posteriormente, el 20 de septiembre de 2012, la línea de crédito fue enmendada para, entre otras cosas, modificar la tasa de interés primario.

Así las cosas, Cordero & Associates dejó de pagar el préstamo según pactado, siendo el último pago efectuado en el mes de junio de 2015. A tales efectos, el 29 de septiembre de 2015, el BPPR reclamó las cantidades correspondientes a los meses de julio, agosto y septiembre de 2015, a ser pagadas dentro de un término de diez (10) días, de lo contrario declararía la totalidad de la deuda vencida. Subsiguientemente, el 23 de septiembre de 2023, el apelado envió una misiva al matrimonio Cordero-Torres reclamando el saldo de la deuda.

Ahora bien, la parte apelante argumentó que el asunto en controversia se encontraba prescrito toda vez que el negocio jurídico estaba constituido en un instrumento negociable y, como tal, tenía un término prescriptivo de tres (3) años conforme dispone la Sección 2-118 de la Ley Núm. 208-1995, *supra*. No obstante, luego de un examen del instrumento que nos ocupa colegimos que el mismo no se rige por las disposiciones de la referida ley.

Recordemos que la Sección 2-104 de la Ley Núm. 208-1995, *supra*, sec. 504, define un instrumento negociable como una orden incondicional de pago que, entre varias cosas, no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago. De no satisfacerse lo anterior, el mismo no se reputa como negociable.

En este sentido, surge del *Anejo al Contrato - FlexiCuenta de Negocios*, que se hace referencia a los términos y condiciones contenidos en otro contrato, a saber, el *Contrato de Cuentas de Depósito*. En particular, dispone que "[l]os términos y condiciones antes expuestos y los contenidos en el *Contrato de Cuentas de Depósito* (del cual este Anejo forma parte) constituyen la totalidad del acuerdo entre el Banco y el Depositante". Lo anterior repudia el carácter negociable del referido instrumento, por lo que concluimos que no eran aplicables las disposiciones de la Ley Núm. 208-1995, *supra*.

En la alternativa, el matrimonio Cordero-Torres nos planteó que de no ser aplicable la Ley Núm. 208-1995, *supra*, por tratarse de una línea de crédito comercial, regirían las disposiciones contenidas en el Código de Comercio. Dicho esto, la jurisprudencia al respecto establece que quien invoque dicho código le recae el peso de la prueba sobre su aplicabilidad. *Gananciales v. Paniagua Diez*, supra. A pesar de ello, la parte apelante no presentó prueba alguna

sobre el uso dado a los fondos obtenidos por la línea de crédito. Por lo que, no nos puso en posición para atender dicho planteamiento.

En virtud de lo anterior, juzgamos que el asunto en controversia se rige por las disposiciones del Código Civil. A tales efectos, el BPPR ostentaba un término de prescripción de quince (15) años para llevar a cabo su reclamación. Por lo cual, aun si determináramos que las gestiones de cobro del apelado no tuvieron efecto interruptor, el BPPR presentó la *Demanda* dentro del término prescriptivo.

Así las cosas, examinada la documentación que obra en el expediente, no existe controversia que: entre Cordero & Associates y el BPPR existe un contrato debidamente constituido; el matrimonio Cordero-Torres se obligó solidariamente a satisfacer las obligaciones de la extinta corporación, y la deuda estaba líquida, vencida y exigible. A tales efectos, el TPI actuó correctamente al dictar sentencia sumaria y declarar Con Lugar la *Demanda* de epígrafe. Por lo cual, determinamos que los errores señalados no fueron cometidos y confirmamos la *Sentencia* apelada.

**IV.**

Por los fundamentos que anteceden, se confirma la determinación apelada.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones